IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| CATHERINE ANN NEWSHAM, individually and as personal representative of the ESTATE OF GEORGE M. NEWSHAM, deceased, and on behalf of GINNI LOUISE NEWSHAM and BRENT NEWSHAM, minor children , <br><br> Plaintiffs, <br><br> vs. <br><br> STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and STATE FARM FIRE AND CASUALTY COMPANY, <br><br> Defendants. | Case No. A05-0092 CV (JKS) <br><br><br> O R D E R |

    Catherine Ann Newsham ("Catherine") brings this action individually and as the personal representative of the estate of her deceased husband George M. Newsham ("George") against State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company (collectively referred to as "State Farm").  Catherine seeks a declaratory judgment interpreting certain policies of automobile liability insurance that she purchased on behalf of her family. Specifically, she seeks to recover additional proceeds under the under-insured motorist coverage ("UIM") provisions of four policies of primary automobile liability insurance and one umbrella policy issued by State Farm.  This case was originally brought in Alaska state court and was removed to this Court by State Farm.  This Court has jurisdiction pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 2201.

## INTRODUCTION

    Catherine concedes that State Farm has paid her $1.1 million, which reflects the face amount of the UIM coverage to which she is entitled.  She argues, however, that she is also entitled to

attorney fees and prejudgment interest based on the total amount the jury would have awarded her against the under-insured motorist who caused her husband's death. She estimates this amount to be $4,000,000. She reasons that Alaska statutes require UIM coverage to mirror liability coverage, and the liability coverage she purchased would have been interpreted by the Alaska Supreme Court as providing for costs and fees and pre-judgement interest on any judgment recovered against the insured for purposes of liability coverage. Catherine recognizes that her UIM coverage did not expressly provide for the payment of costs and attorney fees or pre-judgment interest on the total amount of a potential judgment against the under-insured motorist, but contends that in conformity with Alaska statutes it must be "reformed" to provide such coverage.

State Farm counters that the rules upon which Catherine relies are derived from statutes that apply only to policies issued within Alaska and Catherine's claims against it are based upon policies that were issued in Kansas and Ohio. State Farm argues that neither Kansas nor Ohio have statutes requiring UIM insurance to mirror liability coverage, nor do the courts of Kansas and Ohio "reform" UIM coverage to mirror liability coverage. State Farm argues that this Court should apply the law of Kansas and Ohio rather than the law of Alaska, resulting in the Court finding that State Farm does not owe Catherine additional funds.

The Court understood the parties to believe that a conflict existed between the applicable laws of Alaska and the laws of Kansas and Ohio and that a determination of which law applies would resolve the dispute between them. The Court therefore directed the parties to brief the choice of law issues. *See* Docket Nos. 13; 19; 24; 26. Also before the Court is State Farm's motion to dismiss or stay. Docket Nos. 5 (Mot.); 8 (Reply); 7 (Opp'n).

The parties agree in general on the methodology that the Alaska Supreme Court would utilize in determining choice of law where the law of more than one state might be applied to resolve a pending dispute. Alaska employs the 'most significant relationship' methodology set out in Restatement (Second) Conflict of Laws to resolve choice of law problems. *See, e.g., Palmer G. Lewis Co. v. ARCO Chemical Co.*, 904 P.2d 1221, 1227 (Alaska 1995). Alaska will make a separate choice of law analysis for each issue presented. *Savage Arms, Inc. v. W. Auto. Supply Co.*, 18 P.3d 49, 53 (Alaska 2001). Questions regarding UIM policies may raise both tort and contract

ORDER

issues. *See Johnson v. United States Fid. & Guar. Co.*, 696 N.W.2d 431 (Neb. 2005). There is no Alaska case directly on point. Cases from other jurisdictions typically hold that the insured's right to collect damages from the under-insured motorist and the amount of those damages present tort questions that are addressed using tort choice of law principles, while questions regarding policy limits and related questions present contract questions addressed under the forum's contract choice of law principles. *Id*. at 437–441.

The parties also agree that the issues in this case relate to which UIM provisions the applicable law requires automobile liability insurance policies to contain. Specifically in dispute is whether the applicable law requires policies issued in Kansas and Ohio to provide UIM coverage that mirrors liability coverage and includes a provision for attorney fees and pre-judgment interest on the amount that an insured might recover at trial. The Alaska Supreme Court would look to the contract provisions of the Restatement for guidance. *See* Restatement (Second) Conflict of Laws § 6, 187, 188.[1] No one has suggested that the insurance policies contain an express choice of law provision. Therefore they agree that the Court should look to § 188, interpreted in light of the general principals found in § 6. Many cases interpreting the Restatement require application of the law of the state where an insurance policy is issued, even where the motorist thereafter travels to another state and is injured by an under-insured motorist. *See* George L. Blum, Annotation, *Conflict of Laws in Determination of Coverage Under Automobile Liability Insurance Policy*, 110 A.L.R. 5th 465 (2005).

The Court recognizes that there are differences between the respective laws of Alaska, Ohio, and Kansas regarding the circumstances in which attorney fees and pre-judgment interest are recoverable by the prevailing party in litigation. Those differences, however, do not affect the proper result in this case. As non-outcome affecting conflicts, the Alaska Supreme Court would likely label the differences in the states' laws as false conflicts. As a result it would apply the applicable law of Alaska to resolve this case.

---

[1] In the UIM context there is some overlap between tort and contract policy considerations in applying Restatement (Second) Conflict of Laws § 6 and § 188.

ORDER

The parties have assumed that a conflict exists and have primarily briefed their respective positions on Alaska's choice of law rules for dealing with such conflicts. As something of a substitute for oral argument on the matter, the Court will tentatively issue this order and offer the parties an opportunity to respond. The tentative decision should alert the parties to the Court's assumption of facts and preliminary conclusions of law.

## FACTUAL BACKGROUND

On July 20, 2003, Lloyd Helms was driving a vehicle owned by Mary Ann Beckman near Wasilla, Alaska, when it collided head on with a vehicle owned by Nellie Evern and driven by her husband, Emory Evern. Evern was apparently intoxicated at the time and crossed the center line to collide with the Beckman vehicle. Beckman was insured by State Farm and the Everns were insured by Leader Insurance Company.

George Newsham was riding as a passenger in the front seat of the Beckman vehicle. He was killed instantly. Catherine, as George's administratrix and the executor of his estate, brought an action against Evern and several bars where Evern had been drinking before the fatal accident. Evern settled with Catherine for the policy limits—$100,000—under his Leader Insurance Company policy, plus costs and attorney fees, for a total settlement of $119,733.96. Catherine settled with State Farm under the Beckman policy for its UIM limits—$50,000— plus costs and attorney fees for a total settlement of $59,941.10. In this case Catherine seeks additional payments under UIM coverage in the applicable state farm policies of insurance. It is undisputed that she purchased the primary policies in Kansas and Ohio, which insured vehicles owned by her family and protected members of her family if they were injured by under-insured motorists.

George and Catherine had been married for twenty-eight years at the time of George's death. They had previously lived in Alaska from 1990 to 1996. During much of that time George worked as an assistant Municipal Attorney for the Municipality of Anchorage. Catherine is a banker who worked for Key Bank during her years in Alaska. In 1996, the Newshams moved to Ohio, where Catherine continued to work for Key Bank and George practiced law. In 2002, the Newshams decided to move permanently to Topeka, Kansas to be closer to family. In January, 2003, the Newshams separated temporarily so that Catherine could take a job as a vice president in

ORDER

a Kansas Bank. George remained in Ohio to care for the couple's two children, Ginni Louise and Brent. The Newshams planned that George would bring the children to Kansas at the completion of the school year, reuniting the family. He spent four days in Kansas with Catherine over Valentine's day in 2003. In March of 2003, Catherine flew to Ohio in order to drive Ginni's truck, with Brent as a passenger, to Kansas apparently at the same time George drove a Ford Taurus the family owned. George spent approximately one week in Kansas with his family before driving the Taurus to Alaska. It was the Newshams' plan that George would temporarily relocate to Alaska in order to obtain employment and work for approximately six months in order to vest his state retirement. His years of service with the Municipality of Anchorage fell approximately five months short of vesting. At the time of his fatal accident, George had leased an apartment for six months in Anchorage and had acquired a valid Alaska driver's license. He apparently had not found the desired employment that would enable him to vest his state retirement. He also had not registered his Ford Taurus, the only insured vehicle which he brought to Alaska. He definitely did not purchase a separate policy of automobile liability insurance in this state.[2]

During their residence in Ohio, the Newshams had acquired four primary automobile insurance policies for their four vehicles from State Farm, and an umbrella policy also issued by State Farm. All five policies provided UM coverage and UIM coverage for George. Catherine assumed the responsibility for placing insurance and keeping it up to date. When she moved to Kansas, she discussed insurance coverage with her Ohio State Farm agent and he persuaded her to cancel her four primary policies in order to have new policies issued using forms that complied with Kansas State Law. It was decided that the umbrella policy would be cancelled when its policy period expired, and a new Kansas policy would be issued. Catherine discussed insurance coverage

---

[2] Catherine testified by affidavit that she had discussed George's impending trip to Alaska with her state farm insurance agent in Kansas and he had told her that George would be covered while here. Catherine did not set out in detail the content of her conversation. She does allege that the alternate of purchasing an "Alaska" policy from State Farm was discussed and says she was told not to worry about it. It is undisputed that State Farm is authorized to transact business in Alaska and sell insurance in Alaska. This order does not address the question whether State Farm or its agent are liable in tort to Catherine for, by way of example, misrepresentation.

ORDER

with a State Farm agent in Kansas and informed him that George would be driving one of the vehicles to Alaska for an extended stay. He assured her that there would be no problems with coverage. State Farm was immediately notified of George's death, conducted an investigation, and initially offered Catherine $850,000 as a full settlement of George's right to UIM coverage under the five policies. This figure was eventually raised to approximately $1.1 million. State Farm expressly declined to pay any amount as Alaska Rule of Civil Procedure 82 attorney fees. State Farm did pay some amount as pre-judgment interest. Catherine believes a greater amount is due.

## PROCEDURAL BACKGROUND

State Farm and Catherine filed two separate actions seeking a declaratory judgment regarding the issues they dispute. State Farm filed an action in Kansas state court, and a few days later Catherine filed her action in Alaska state court. State Farm removed Catherine's action to this Court and moved to stay or dismiss. State Farm essentially argued that Catherine's action was for declaratory judgment, that an action was pending in Kansas state court addressing the same issues, and that Ninth Circuit authority strongly counseled that insurance disputes should be resolved in state court. *See, e.g., Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220 (9th Cir. 1998) (en banc). Catherine vigorously opposed, arguing that the case should be decided in Alaska.

The Court incorporated by reference its earlier discussion of the *Dizol* factors in *National Chiropractic Mutual Ins. Co. v. Doe*, 23 F. Supp. 2d 1109 (D. Alaska 1998), and *Ryan v. Sea Air, Inc*. 902 F. Supp. 1064 (D. Alaska 1995). With regard to declaratory judgment actions in which an Alaskan insured and an insurer licensed to sell insurance in Alaska debated coverage and exclusions, the Court concluded it would ordinarily retain the case in the face of a *Dizol* challenge unless there was an earlier filed action in state court addressing all of the issues presented in the declaratory judgment action. In this case there was an earlier action filed in Kansas, but the Court followed Ninth Circuit law and discounted it because it was clear that the parties had engaged in a race to the courthouse, and both could be accused of forum shopping.[3] Most significantly, the

---

[3] Catherine filed a parallel motion to stay in Kansas state court, which the court there granted. It appears that the Kansas court also concluded that the first to file rule should be given

ORDER

contest in this case was not a contest between resolution of the issues in Alaska state court or in the federal court sitting in Alaska, but a contest between an Alaska court and a Kansas court. It was in this context, which is not addressed at all in *Dizol*, that the Court decided that choice of law considerations would determine whether the case should be decided in Kansas or in Alaska. *See Davis v. Prop. & Cas. Ins. Co of Hartford,* 2005 WL 1694083 (D. Alaska July 14, 2005) (using a similar analysis to decide a motion to change venue). If, after applying the appropriate choice of law rules, the Court concluded that Kansas law applied, it would defer to the Kansas state court. Alternatively, if Alaska law governed, the Court would retain jurisdiction and proceed to decide the case. The Court therefore denied the motion to dismiss and encouraged the parties to brief the choice of law issues. *See* Docket Nos. 10 (Order); 11 (Mot. for Reconsideration); 25 (Order). They have done so, and the matter is ripe for decision.

## DISCUSSION

The first step in addressing a choice of law question is determining whether a true conflict exists. *See Del Real v. U.S. Fire Ins. Crum & Forster*, 64 F. Supp. 2d 958, 961 (E.D. Cal. 1998), *aff'd* 188 F.3d 512 (9th Cir. 1999). Here, three states have some connection with this lawsuit: Ohio, because the Newshams were living there at the time they purchased the umbrella policy; Kansas, because the Newshams were beginning the process of establishing a family residence in Kansas and had arranged for substitute insurance policies there; and Alaska, as the place where the accident occurred. Differences between the laws of the three states alone do not present a conflict. A true conflict exists if the parties point to specific legal principles that would lead to different results depending upon a choice of law. Then and only then will the Court apply the choice of law rules of the forum to resolve the choice. *See Robinson v. U-Haul Co.*, 785 F. Supp. 1378 (D. Alaska 1992) (when this Court exercises diversity jurisdiction it looks to the law of the forum to resolve choice of law problems).

---

little weight in this case because of the skirmishing between the parties at the time the two actions were filed. The Kansas court decided to let this case run its course before he would lift the stay in Kansas.

ORDER

The parties have not addressed this aspect of the case directly by identifying specific areas where the relevant law of Kansas, Ohio, and Alaska differ and where courts of those states properly applying that law to the issues in this case would arrive at different results. The parties have argued all around the issue, however, and the Court can fairly infer their respective positions from the briefing. Since the dispute in this case turns on the recoverability under UIM coverage of an attorney fee award based upon a putative judgment, the Court must look to see if application of Kansas or Ohio law would lead to a different result than if Alaska law were applied.

At the outset, it is clear that in some circumstances differences in the law of these three states regarding attorney fee awards to prevailing parties might lead to different results in pending litigation. Most jurisdictions in the United States follow the American rule, and in the ordinary case do not require the losing party in litigation to compensate the prevailing party for his attorney fees. *See, e.g., Alyeska Pipeline Serv. Co. v. The Wilderness Soc'y*, 421 U.S. 240 (1975). The parties appear to assume that Kansas and Ohio follow the American Rule. In contrast, Alaska generally allows the prevailing party in civil litigation to recover a portion of its attorney fees as costs from the losing party. *See, e.g., McDonough v. Lee*, 420 P.2d 459 (Alaska 1966). The Alaska Supreme Court has interpreted automobile liability insurance policy provisions that provide that the insurer will pay all costs assessed against its insured in a negligence action as a promise to pay attorney fees. The amount is calculated on the entire judgment against the insured, without regard to policy limits, unless the insurer expressly limits its liability for attorney fees to a percentage of its policy limits. *See Therchik v. Grant Aviation, Inc*., 74 P.3d 191 (Alaska 2003). These conclusions have been made applicable to the UIM situation by a statutory scheme that requires insurers selling policies of insurance in Alaska to offer UIM coverage to prospective customers that mirrors the liability coverage offered. If the customer does not wish to pay the premium for identical liability and UIM coverage, he or she must expressly reject it. It is not contended that State Farm followed these steps when it negotiated with Catherine in Kansas or Ohio. The policy provided the Court is silent regarding Alaska law and Rule 82 attorney fees. Nor is it contended that Catherine was specifically told about Alaska insurance law or expressly waived coverage in writing for attorney fees or pre-judgment interest. Thus, if the Alaska statutes apply to the policies

ORDER

issued by State Farm, they would have to be "reformed" to provide for unlimited attorney fees calculated against a potential judgment that could exceed $4,000,000, as well as pre-judgment interest on that amount. *See Holderness v. State Farm Fire and Cas. Co.*, 24 P.3d 1235 (Alaska 2001) (applying these rules to umbrella policies); *State Farm Mut Auto. Ins. Co. v. Harrington*, 918 P.2d 1022, 1025 (Alaska 1996) (applying these rules to primary UIM coverage); *Burton v. State Farm Fire & Cas. Co.*, 796 P.2d 1361 (Alaska 1990).

It undisputed in this case that Alaska law governs Catherine's tort action against Evern and that she was entitled to recover Rule 82 attorney fees if she prevailed in that action. She did prevail, and the parties to that litigation settled on the basis of paying her an amount for such attorney fees. Catherine's action against State Farm would allow her to collect Rule 82 attorney fees if she prevailed because Rule 82 is part of the procedural law of Alaska and the Alaska courts would apply Alaska law to procedural questions and only look to the law of other jurisdictions regarding substantive matters where appropriate under the governing choice of law rules. [4] Catherine relies upon cases such as *Holderness* and *Harrington* for the proposition that absent an effective waiver by the insured, UIM coverage must "mirror" liability coverage and if liability coverage covers costs assessable against the insured when the insured is sued by a third party, then UIM coverage must cover costs that would be assessed against the third party tortfeasor when the tortfeasor is sued by the insured. In earlier cases the Supreme Court held that where an insurance policy provides that the insurer will pay all costs assessed against the insured, costs include Rule 82 attorney fees, which, in the absence of limiting language in the policy, includes attorney fees measured by the total judgment against the insured or likely to be returned against the insured and not measured against policy limits. *See, e.g., Liberty Nat'l Ins. Co. v. Eberhart,* 398 P.2d 997, 999–1000 (Alaska 1965).

---

[4] *Long v. Holland America Line Westours, Inc.*, 26 P.3d 430, 433 (Alaska 2001); *Marine Constr. & Design Co. v. Vessel Tim,* 434 P.2d 683 (Alaska 1967); *Lillegraven v. Tengs*, 375 P.2d 139, 140–141 (Alaska 1962) (discussing procedural/substantive distinction for purposes of conflict of laws).

ORDER

State Farm believes that its primary insurance policy should be interpreted under Kansas law and its umbrella policy interpreted under Ohio law. If so, the applicable law would exclude the collection of attorney fees as part of UIM coverage. Catherine believes that the policy interpreted in light of Alaska law would require payment of pre-judgment interest and attorney fees.

Neither party has cited cases from Ohio or Kansas establishing principles for the interpretation and construction of insurance contracts in the absence of a controlling statute different from those utilized in Alaska. Therefore, the Court will assume that all three states interpret insurance contracts in accordance with the reasonable expectations of the insured and construe such policies contra proferentum, that is, against the insurer who drafted the contract. Finding no conflict, the Court will apply Alaska law regarding the interpretation and construction of insurance contracts. *See Hillman v. Nationwide Mut. Fire Ins. Co.,* 758 P.2d 1248, 1250 (Alaska 1988).

The parties have provided a copy of the policy issued to cover the Ford Taurus that George brought to Alaska. The Taurus policy provides that State Farm will cover damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury must be sustained by an insured and caused by accident arising out of the operation, maintenance, or use of an uninsured motor vehicle. "Uninsured motor vehicle" is defined to include an under insured land motor vehicle, as in this case. The policy provides that if the parties cannot agree on whether the insured is entitled to collect damages from the under-insured motorist or the amount of damages, the dispute may be submitted to arbitration at the election of the insured. Damages are payable up to the stated limits of liability—in this case $250,000—reduced by amounts the insured or his estate receives from other sources, including the under insured motorist. There is no specific provision for the payment of court costs and attorney fees. The costs of arbitration are to be split between the parties, with each party paying its own arbitrator and expert witnesses and the parties splitting the cost of the third arbitrator. Attorney fees pursuant to Rule 82 are not recoverable for attorney expense incurred during an arbitration. *See* AS

ORDER

21.89.020(f)(1); AS 09.43.100; *Alaska State Housing Auth. v. Riley Pleas, Inc.*, 586 P.2d 1244, 1249 (Alaska 1978).[5]

The early Alaska cases held that insurers who agreed in a policy of liability insurance to pay all costs assessed against the insured were liable for Rule 82 attorney fees as costs. *See Liberty Nat'l Ins. Co.*, 398 P.2d at 999–1000. The Court reached this result by interpreting the policies of insurance. Here, however, the policy of insurance is silent regarding costs and attorney fees in UIM situations. Later cases applied Alaska statutes to allow recovery of attorney fees through reformation on the theory that statutory law compelled UIM coverage equivalent to liability coverage and liability coverage typically extended to costs including attorney fees. *See, e.g., Harrington,* 918 P.2d at 1025–27 (interpreting AS 21.89.020(c)(1)). State Farm argues, however, that the statutes are limited by their terms to policies issued in this state. State Farm is correct. In order to employ this reasoning, therefore, Catherine must present one of two arguments. First, that while the statutes are limited to policies issued in this state, the legislature intended that they apply to policies issued outside the state to non-residents. Second, if the statutes do not apply to policies sold in other states, that the common law should be interpreted to fill the gap and imposes the same requirements on policies issued outside the state to insured persons injured within the state that would apply by statute to policies issued within the state.

No Alaska Supreme Court decision specifically addresses whether the Alaska statutes governing UIM coverage apply to policies issued outside of Alaska. In addressing the issue for the first time, the Alaska Supreme Court will apply its independent collective judgment and adopt the rule of law that is most persuasive in light of precedent, reason, and policy. *Coughlin v. Gov't Employees Ins. Co.*, 69 P.3d 986, 988–89 (Alaska 2003). The statutes in question are clear and unambiguous. They refer to "an automobile liability policy . . . that is sold in the state," AS

---

[5] The court may award attorney fees in the ordinary course where an action is commenced in Superior Court to confirm, vacate, modify, or correct an arbitrator's award. *See* AS 09.43.140. Fees may be also awarded for the arbitration itself where it is ordered by the court, so long as the action is not filed needlessly in order to obtain attorney fees. *See United Servs. Auto. Ass'n v. Pruitt*, 38 P.3d 528, 532 (Alaska 2001).

ORDER

21.89.020, and to insurance purchased by the operator or owner of a motor vehicle subject to registration within the state, AS 28.22.011.  It is not clear that any of the Newshams' vehicles were subject to registration within the state.  Three of the four were not physically present in the state.  George did not register the Taurus within the state, and was not required to do so.  *See* AS 28.10.011(8) (exempting from in state registration vehicles of non-residents meeting the criteria of AS 28.10.121).  George would have had to register the Taurus if he gained full time employment in the state, which he apparently had not done at the time of his death.  If George were required to register his vehicle in Alaska, he would have been required to obtain an Alaska policy.  It is noteworthy, though hardly conclusive, that the Alaska Supreme Court refers to the policies governed by AS 21.89.020(c) as those written in Alaska.  *See Progressive Ins. Co. v. Simmons,* 953 P.2d 510, 513 (Alaska 1998).

In Alaska the plain language of an applicable statute does not end the inquiry.  Catherine is free to point to strong legislative history or other extrinsic evidence that would establish that the legislature did intend AS 21.89.020 to apply to policies sold outside the state to individuals who thereafter bring vehicles to Alaska during the policy period.  *See Wold v. Progressive Preferred Ins. Co.*, 52 P.3d 155, 161 (Alaska 2002).  She has failed to do so.  In fact, Catherine has not addressed legislative intent regarding the coverage of AS 21.89.020.  In order to satisfy her burden, Catherine must show that Alaska's common law fills any gap in statutory coverage and independently requires insurers issuing policies in other states to satisfy Alaska requirements on pain of having policies reformed to provide the required coverage if an insured is injured by an under insured motorist while visiting in Alaska.

The case law does not support this position.  In fact, the earlier cases that imposed obligations under Rule 82 viewed the question as one of pure contractual interpretation and indicated that the insurer was free to draft the policy in such a way as to exclude an award of attorney fees.  *See Hillman v. Nationwide Mut. Fire Ins. Co.*, 758 P.2d 1248 (Alaska 1988); *Liberty Nat'l Ins. Co v. Eberhardt*, 398 P.2d 997, 1000 (Alaska 1965).  In later cases, the court has been hesitant to expand on the legislatures provisions by holding exclusions not addressed in the statutes void as in violation of public policy.  *See, e.g., Curran v. Progressive Northwestern Ins. Co.*, 29

ORDER

P.3d 829 (Alaska 2001); *Wold,* 52 P.3d at 158–162 (refusing to invalidate the physical contact rule for UIM coverage on policy grounds).  In sum, in the absence of a more compelling presentation weighing the effects of imposing such a burden on insurers, the Court hesitates to predict that the Alaska Supreme Court would apply the reasoning of *Harrington* and *Holderness* to policies sold in Kansas and Ohio to an insured who was a resident of those states at the time the insurance was purchased.

Catherine's argument for imposing a common law requirement on policies sold outside the state identical to the burden imposed by statute on those policies sold within the state essentially track the arguments set out in Restatement (Second) Conflict of Laws § 6, 188 and 205 interpreted in light of the Supreme Court's decisions in *Long v. Holland America Line Westours, Inc*., 26 P.3d 430 (Alaska 2001), and *Savage Arms, Inc. v. Western Auto Supply Co.,* 18 P.3d 49 (Alaska 2001). Catherine recognizes that generally where a contract is delivered and performed in one jurisdiction, that jurisdiction's laws should govern its interpretation.  She argues, however, that Alaska would apply different rules to insurance contracts.  She reasons that Insurance companies licensed to sell insurance nationwide should "expect" that their insureds will travel outside the jurisdiction in which the policy is issued.  UIM is portable and travels with the insured.  Since State Farm sells policies in Alaska that conform with Alaska law, it is not unreasonable to require State Farm to comply with that law when its insured foreseeably comes into the state and suffers the very injury insured against.  *See Allstate Ins. Co. v. Hague*, 449 U.S. 302, 313–17, n.21 (1981) (stressing that an insurer licensed to do business in a state is present there and may be presumed to know the law applicable in the districts in which it is licensed); *Abramson v. Aetna Cas. & Sur. Co.*, 76 F.3d 304 (9th Cir. 1996) (stressing significance of number of out of state drivers in Hawaii); *Mikelson v. United Servs. Auto. Ass'n*, 111 P.3d 601 (Hawaii 2005) (applying Hawaii law regarding UIM coverage to insured who was temporarily living in Hawaii where policy, while drafted and delivered in California, applied to accidents and losses that occur anywhere within the United States).  It does not appear that the Alaska Supreme Court would be prepared to extend the scope of AS 21.89.020(a).

Having determined that the Supreme Court of Alaska would not apply the relevant Alaska statutes to policies purchased in other states, it follows that no true conflict exists in this case.

ORDER

Application of Alaska law or some other law that follows the American rule would not alter the outcome.  Specifically, the Court concludes that AS 21.89.020 does not apply to policies of insurance sold in Kansas and Ohio to residents of those states, even if it is foreseeable that those residents will travel to Alaska.  The Court further concludes that AS 28.20.010 primarily applies to insurance offered to establish financial responsibility after accidents, and AS 28.22.011 only applies to insurance procured for vehicles required to be registered in the state.  While the provisions must be construed together, they have specific provisions that determine the scope of their application. *See, e.g., Simmons,* 953 P.2d at 520–22 (discussing the interplay between these various statutes).  Because AS 21.89.020 is the statute that primarily refers to the policies that insurers must issue, the fact that it is limited to policies sold within the state resolves the issue of the applicability of *Harrington* and *Holderness* to this case.[6]

**IT IS THEREFORE ORDERED:**

The Court **TENTATIVELY GRANTS IN PART** Catherine's motion for partial summary judgment at **Docket No. 19** to the extent it asks the Court to apply Alaska substantive law in deciding the issues of this case.  The motion is **TENTATIVELY DENIED** to the extent that it suggests that Alaska statutory law was intended by the legislature to govern policies of insurance sold in Kansas and Ohio to residents of those states who thereafter travel to Alaska.  State Farm's motion for summary judgment, which seeks to establish that Kansas or Ohio law governs, **Docket No. 13** is **TENTATIVELY DENIED.**

Any party wishing to comment on this tentative decision should file a supplemental brief on or before **Monday, January 30, 2006**.  After that date the Court will enter a final decision.

---

[6] AS 21.89.020 incorporates AS 28.20.440–445 and applies them beyond the situations identified in AS 28.20.440(a) (policies that are endorsed or offered to establish financial responsibility after an accident).

ORDER

Dated at Anchorage, Alaska, this 19th day of January 2006.

/s/ James K. Singleton, Jr.

**JAMES K. SINGLETON, JR.**
United States District Judge

ORDER